## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN O. KALU,               :    Civil No. 3:19-CV-01621
                              :

        Plaintiff,       :
                              :

        v.                 :
                              :

MR. SPAULDING, WARDEN OF   :
FCI ALLENWOOD, *et al.*,        :
                              :

        Defendants.     :    Judge Jennifer P. Wilson

## MEMORANDUM

This case involves a number of claims arising from an alleged assault of a federal inmate by a prison staff member.  Before the court is Warden Spaulding, Lt. K. Middernacht and K. Bittenbender's ("Defendants") motion to dismiss, or in the alternative, for summary judgment.  (Doc. 21.)  For the reasons that follow, Defendants' motion will be granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

#### A. Allegations of the Complaint

On August 20, 2019, Plaintiff Jon O. Kalu ("Plaintiff" or "Kalu"), a self–represented federal prisoner formerly housed at the Allenwood Federal Correctional Institution ("FCI Allenwood") in Allenwood, Pennsylvania, initiated this civil rights action pursuant to *Bivens*, 403 U.S. 288 (1971).[1]  (Doc. 1.)  Named

---

[1] Kalu is presently housed at the Victorville Federal Correctional Institution in Adelanto, California.  (Docs. 1, 34, ¶ 8.)

as Defendants are Warden Spaulding, Lt. K. Middernacht, and Disciplinary Hearing Officer ("DHO") K. Bittenbender.  (*Id.*)

In his complaint, Kalu alleges that Lt. Middernacht sexually assaulted him on three separate occasions while he was housed in general population: October 14, October 29, and December 1, 2016.  (*Id.*, ¶¶ 1–4, ¶ 7.)  Next, Kalu alleges that on November 2, 2016, the same day he sent a confidential electronic email to Warden Spaulding concerning Lt. Middernacht's repeated aggressive sexual behavior, he was removed from general population and placed in the Special Housing Unit ("SHU").  (*Id.*, ¶¶ 6–7.)  On November 9, 2016, Kalu was interviewed by members of the Secret Investigation Services ("SIS") concerning his allegations against Lt. Middernacht.  (*Id.*, ¶ 8.)  On November 14, 2016, Kalu learned that staff concluded their investigation after Lt. Middernacht denied the allegations.  (*Id.*, ¶ 9.)  At some point, Kalu was issued an incident report for refusing to leave the SHU and return to "the compound."

Kalu claims that DHO Bittenbender conducted the disciplinary hearing on December 20, 2016.  (*Id.*, ¶¶ 11–12.)  During the hearing, DHO Bittenbender threated to impose numerous sanctions if Kalu did not drop his Prison Rape Elimination Act ("PREA") complaint against Lt. Middernacht.  After refusing to do so, DHO Bittenbender retaliated against Kalu and imposed various sanctions including the disallowance of good conduct time and the loss of various privileges

(phone, visits, loss of mattress between 8 a.m. and 8 p.m.).  (*Id.*, ¶¶ 11–12, 16.)  On February 17, 2017, after Kalu filed disciplinary appeal 888397–R1, the Administrative Remedy Coordinator "expunged the sanctions imposed" by DHO Bittenbender.  (*Id.*, p. 18.[2])  Kalu also claims all Defendants forced him to endure substandard conditions of confinement while housed in the SHU.  (*Id.*, ¶ 15.)  Kalu's claim for monetary damages, TRT–NER–2019–01529, was denied by the Bureau of Prisons ("BOP") on December 21, 2017.  (*Id.*, p. 19.)  Kalu continues to suffer from mental anguish because of these events.  He believes he "may have graduated into PTSD."  (*Id.*, ¶ 17.)  He seeks compensatory and punitive damages.  (*Id.*, ¶¶ 19–22.)

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

## B.      Bureau of Prisons' Administrative Remedy Procedures[3]

The BOP has an administrative remedy procedure that allows an inmate to

seek formal review of any issue relating to any aspect of confinement, 28 C.F.R.

§§ 542.10–542.19 (2004).  (Doc. 22 ¶ 1.)  Before seeking formal review, an inmate

must first attempt an informal resolution of the matter by presenting his complaint

to staff on an Informal Resolution Attempt form, known as a BP–8.  (28 C.F.R.

§ 542.13(a); Doc. 22 ¶ 2.)  If the inmate is not successful in achieving an informal

resolution, he may submit to the Warden a Request for Administrative Remedy,

referred to as a BP–9.  (28 C.F.R. § 542.14; Doc. 22 ¶ 3.)  If dissatisfied with the

Warden's response, the inmate may file a BP–10, which is a Regional

Administrative Remedy Appeal, with the Regional Director within 20 days of the

Warden's response.  (28 C.F.R. § 542.15(a); Doc. 22 ¶ 5.)  If the inmate is not

---

[3] These facts are taken from the Defendants' statement of material facts and supporting exhibits. Although Kalu filed a brief in opposition to Defendants' motion, he did not file a counter statement of facts as required by M.D. Pa. Local Rule 56.1.  Consequently, Defendants' statement of facts is deemed admitted to the extent they are properly supported.  *See* Doc. 22. While "conclusory, self–serving affidavits are insufficient to withstand a motion for summary judgment," an affidavit based on personal knowledge setting forth "specific facts that reveal a genuine issue of material fact" is sufficient to defeat summary judgment.  *Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)).  To the extent Kalu presents such evidence, it will be considered by the court.  Thus, the following facts are undisputed, or where disputed by Kalu or the record, reflect Kalu's version of the facts pursuant to this court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party.  *See Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019), cert. denied sub nom.; *City of Camden, New Jersey v. Forrest*, 140 S. Ct. 902, 205 L. Ed. 2d 465 (2020).

satisfied with the Regional Director's response, he may file a Central Office Administrative Remedy Appeal, referred to as a BP–11, to the BOP's General Counsel within 30 days of the date when the Regional Director signed the response.  (28 C.F.R. § 542.15(a); Doc. 22 ¶ 6.)  The BOP's review of a Central Office Administrative Remedy Appeal completes all administrative remedy processes available to inmates.  (Doc. 22 ¶ 7.)

The BOP's administrative remedy procedures allow for limited exceptions to the requirement that an inmate file an administrative remedy to the Warden.  If the inmate reasonably believes the issue he presents in the administrative remedy "is sensitive and the inmate's safety or well–being would be placed in danger if the request became known at the institution," the inmate may submit the request directly to the appropriate Regional Director.  (28 C.F.R. § 542.14(d)(1); Doc. 22 ¶ 8.)  Similarly, appeals of DHO decisions, i.e. disciplinary matters, are submitted directly to the appropriate Regional Director.  (28 C.F.R. § 542.14(d)(2); Doc. 22 ¶ 9.)

The Administrative Remedy Coordinator at any level (institutional, regional, or central office) may reject and return to the inmate, without response, any request or appeal that does not meet any of the procedural or technical requirements of the BOP's administrative remedy program.  (28 C.F.R. § 542.17(a); Doc. 22 ¶ 10.)  When an administrative remedy or appeal is rejected, the Administrative Remedy

Coordinator provides the inmate with written notice explaining the reason for rejection and returns the rejected submission to the inmate.  (28 C.F.R. § 542.17(b); Doc. 22 ¶¶ 11, 14.)  If the identified defect giving rise to the rejection is curable, the inmate is provided a reasonable extension of time within which to correct the defect and resubmit the administrative remedy request or appeal.  (28 C.F.R. § 542.17(b); Doc. 22 ¶ 12.)  The exception to this rule is when an inmate submits a procedurally or technically defective sensitive administrative remedy or appeal.  In such instances the original sensitive submission will not be returned to the inmate.  The inmate will only receive the written rejection notice.  (Doc. 22-1, Ex. 1, Program Statement 1330.18, Administrative Remedy Programs § 542.17(b)(1), p. 10; Doc. 22 ¶ 13.)

The administrative remedy program is designed "to resolve problems and be responsive to issues inmates raise."  (Doc. 22–1, p. 10.)  "Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals."  (*Id*., p. 12.)

The BOP, in compliance with Congress' passage of PREA, developed specific guidelines for addressing administrative remedy procedures addressing inmate claims of sexual abuse.  (Doc. 22–1, p. 14;  *see also*  28 C.F.R. § 115.52.)  "The agency shall issue a final agency decision on the merits of any portion of a

grievance alleging sexual abuse within 90 days of the initial filing of the

grievance."  (Doc. 22–1, p. 16.)

### C. Kalu's Relevant Administrative Remedy Submissions

The BOP maintains a computerized index of all Administrative Remedies

("AR") filed by inmates "so that rapid verification may be made as to whether an

inmate has exhausted available administrative remedies on a particular issue."

(Doc. 22-1, p. 20, Ex. 2, Lavelle Decl. ¶ 11.)  Below is a review Kalu's relevant

administrative remedies.

### 1.  AR 883971

On November 28, 2016, Kalu submitted AR 883971–R1 to the Northeast

Regional Office concerning a "staff complaint."  (Doc. 22–1, p. 23.)  It was

rejected the next day by the Regional Office.  (*Id*.)  Kalu was advised to "MAKE

ALL NEEDED CORRECTIONS AND RESUBMIT YOUR REQUEST."  (*Id.*)

Kalu resubmitted AR 883971-R2 to the Northeast Regional Office on December 3,

2016 concerning "PREA–Sexual Abuse by Staff."  (Doc. 22–1, p. 24; Doc. 34, p.

40.)  It was rejected on December 9, 2016 for the following reasons:

> REJECT REASON 1:  YOU DID NOT SUBMIT
> PROPER NUMBER OF CONTINUATION PAGES
> WITH YOUR REQUEST/APPEAL.  THE NUMBER
> CITED INCLUDES YOUR ORIGINAL.
>
> REJECT REASON 2:  YOU DID NOT SUBMIT YOUR
> REQUEST OR APPEAL ON THE PROPER FORM
> (BP-10).

> REJECT REASON 3:  DUE TO YOUR ALLEGATIONS, YOUR APPEAL IS BEING FORWARDED TO ANOTHER DEPARTMENT FOR REVIEW; HWOEVER (sic), YOUR APPEAL WAS RETAINED IN ACCORDANCE WITH POLICY.
>
> REMARKS:   YOU STILL HAVE NOT PROVIDED COPIES OF YOUR CONT. PAGE

(Doc. 34, p. 40.)  In support of their motion, Defendants submit the sworn declaration of Attorney Matthew Lavelle, who affirms that Kalu never filed any administrative remedy at the Central Office level.  (DSMF ¶ 15, Doc. 22–1, p. 20, ¶ 12.)  Kalu's Administrative Remedy Generalized Retrieval print out does not reflect that Kalu resubmitted AR 883971-R2 to the Regional Office.  (Doc. 22–1, pp. 21–27.)

## 2.  AR 884586

Kalu submitted AR 884586-R1 to the Regional Office on December 1, 2016, concerning a staff complaint.  (*Id.*, p. 23.)  The Regional Office rejected the administrative remedy on December 2, 2016 because it was not submitted on the proper form.  (*Id*.)  Kalu did not resubmit Administrative Remedy 884586 to the Regional Office.  (*Id*., pp. 21–27.)

8

### D. Kalu's Disciplinary History & Relevant Appeals

While at FCI Allenwood, Kalu received multiple incident reports for refusing to leave the SHU and return to the compound.  (Doc. 22–1, pp. 28–33; Doc. 34, pp. 12–14, 16–18, 27–29.)  Kalu never appealed any disciplinary matter to the BOP's Central Office that involved DHO Bittenbender.  (Doc. 22–1, p. 20, ¶ 12.)

#### 1.     Incident Report ("IR") 2897601

Kalu received IR 2897601 on September 20, 2016 for refusing to obey an order and refusing a program or work assignment.  (Doc. 22–1, p. 31.)  The matter was handled by the Unit Disciplinary Committee on September 22, 2016.  (*Id*.)  At the time Kalu reported "I am in fear for my life."  (*Id*.)

#### 2.  IR 2914040

On November 3, 2016, Kalu received IR 2914040 for refusing to return to general population.  (Doc. 22–1, p. 30; Doc. 34, pp. 12, 17, 14.)  Kalu appeared before DHO Bittenbender on December 1, 2016 for his disciplinary hearing.  DHO Bittenbender found Kalu guilty of refusing to obey.  (Doc. 34, p. 14.)  Kalu did not appeal DHO Bittenbender's decision for Incident Report 291404 via the BOP's administrative remedy program.  (DSMF ¶ 18, Doc. 22-1, pp. 21–27.)

### 3.  IR 2925079 & AR 888397

On December 5, 2016, Kalu received IR 2925079.  (Doc. 34, pp. 16, 13, 18.)
DHO Bomboy, a non–defendant, presided over Kalu's December 20, 2016
disciplinary hearing.  (*Id.*, pp. 16, 18.)  DHO Bomboy found Kalu guilty as
charged.  He issued a disciplinary report on December 20, 2016.  (*Id.*, p. 18.)  Kalu
filed a regional appeal on January 9, 2017, AR 888397–R1.  (*Id.*, p. 20.)  As a
result of his appeal, IR 2925079 was expunged from his record on February 15,
2017 due to lack of evidence.  (*Id.*, pp. 21–22; Doc. 22–1, pp. 28–33.)

### 4.  IR  2953870, AR 898863

On February 21, 2017, Kalu received IR 2953870.  (Doc. 22–1, p. 30; Doc.
34, pp. 27–29.)  His disciplinary hearing was held on March 16, 2017; however,
Kalu refused to attend his hearing.  DHO Bittenbender held the hearing without
Kalu.  (Doc. 34, p. 27.)  In addition to the IR and Investigation, DHO Bittenbender
considered a January 3, 2017 Threat Assessment for Kalu and a September 16,
2016 Memorandum from Special Investigative Agent ("SIA") J. Lyons as evidence
when rendering his decision.[4]  (*Id.*; Doc. 22–1, p. 21)  DHO Bittenbender's
findings included "[i]nculpatory evidence in the form of a Threat Assessment
Report dated 1/3/17 corroborated the evidence cited in this report.  The assessment

---

[4] These documents are not part of the record.  *See* Doc. 22–1, p. 2.

indicates no threat exists to Kalu which would prevent him from returning to the general population at FCI Allenwood." (Doc. 34, p. 28.) DHO Bittenbender found Kalu guilty of refusing to obey an order but dismissed the other charge. A copy of DHO Bittenbender's disciplinary findings was delivered to Kalu on March 17, 2017. (*Id.*, p. 29.)

Kalu appealed DHO Bittenbender's finding regarding IR 2953870 via AR 898863–R1, filed on April 18, 2017. (Doc. 22–1, p. 25.) The Regional Office rejected the administrative remedy and instructed Kalu to submit it to the Regional Office where he was currently housed, i.e., the Mid Atlantic Regional Office. (*Id.*) Kalu resubmitted AR 898863–R2 to the appropriate Regional Office where it was denied. (*Id.*) Kalu did not file an appeal to the BOP's Central Office. (Doc. 22 ¶ 15.)

### E. Kalu's Federal Tort Claim Act Administrative Remedy

Kalu's Federal Tort Claims Act ("FTCA") Administrative Claim No. TRT–NER–2019–01529 was received by the Northeast Regional Office on December 19, 2018. (Doc. 34, p. 36.) Kalu sought $4,000,000.00 based on the personal injury that occurred on December 1, 2016 when he was sexually assaulted by an FCI Allenwood employee. (*Id.*) Regional Counsel denied the claim as untimely because it was filed more than two years after the alleged incident. Kalu was advised he had six months from the date of the December 21, 2017 letter to seek

further relief in federal court.[5]  (*Id*.)  Kalu's request for reconsideration was also denied.  (*Id*., pp. 35, 38–39.)  Kalu filed this action on August 20, 2019.  (Doc. 1.) He does not name the United States as a Defendant.  (*Id*.)

## F. Procedural History

On March 16, 2020, Defendants filed a motion to dismiss and, in the alternative, for summary judgment.  (Doc. 21.)  A statement of material facts, and supporting brief, was timely filed by Defendants.  (Docs. 22–23.)  On June 22, 2020, Kalu filed an affidavit and exhibits in opposition to Defendants' motion. (Doc. 34.)  The same day, the court provided notice to the parties that Defendants' motion to dismiss and, in the alternative, motion for summary judgment would be treated solely as a motion for summary judgment as it raised, *inter alia*, the issue of Kalu's exhaustion of administrative remedies.  (Doc. 35.)  The court directed Kalu to file a supplemental brief in opposition to Defendants' motion for summary judgment as well as their statement of material facts by July 6, 2020.  (*Id*.)  Kalu was cautioned that his failure to file a statement responding to Defendants' statement of material facts would result in Defendants' statement being deemed admitted.  (*Id*.)  Kalu did not file a supplemental brief in opposition to Defendants' motion for summary judgment or respond to their statement of material facts.

---

[5] Six months after Friday, December 21, 2018 was Friday, June 21, 2019.

Defendants did not file a reply in support of their motion for summary judgment. Defendants' motion is ripe for disposition.

### JURISDICTION

This court has jurisdiction over Kalu's complaint pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

### STANDARD OF REVIEW

### A. Motion to Dismiss

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

### B. Motion for Summary Judgement

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law, and is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-

moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).  The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

### DISCUSSION

Defendants argue that *Bivens* does not provide a remedy for Kalu's retaliation claim against DHO Bittenbender and that Kalu fails to allege the personal involvement of Warden Spaulding in the alleged constitutional violations. They also argue that Kalu's claims against Lt. Middernacht and DHO Bittenbender

15

are subject to dismissal as time barred.  Alternatively, Defendants filed a motion

for summary judgment based on Kalu's failure to exhaust administrative remedies.

The court will address each argument.

### A. Kalu's Retaliation Claim is not Cognizable under *Bivens*.

Kalu alleges that after he refused to drop his PREA claim against Lt.

Middernacht, DHO Bittenbender retaliated by imposing unduly harsh sanctions

against him.  (Doc. 1, ¶¶ 11–12, p. 18.)   Defendants correctly assert that there is no

*Bivens* remedy available for Kalu's First Amendment retaliation claims.[6]

To date, the Supreme Court has only recognized a *Bivens* remedy in the

context of the Fourth, Fifth, and Eighth Amendments.  *See Bivens*, 403 U.S. 388

(Fourth Amendment prohibition against unreasonable searches and seizures);

*Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination

in the employment context); *Carlson v. Green*, 446 U.S. 14s (1980) (Eighth

Amendment Cruel and Unusual Punishment Clause for failure to provide inmate

adequate medical treatment).  The Supreme Court cautioned against expanding

*Bivens* beyond the three established circumstances where it has formally

acknowledged the availability of a *Bivens* remedy.  *Ziglar v. Abbasi*, 137 S.Ct.

---

[6] While § 1983  protects against violations of constitutional rights at the hands of state officials, the Supreme Court, in limited situations, has recognized a private cause of action against federal officials where the defendant has violated the plaintiff's rights under color of federal law.  *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).

1843, 1857 (2017) ("[E]xpanding the *Bivens* remedy is now a disfavored judicial

activity" and clarifying that "a *Bivens* remedy will not be available if there are

special factors counselling hesitation in the absence of affirmative action by

Congress.") (internal citation and quotation marks omitted).

Post-*Ziglar*, courts must conduct a two-part test to determine whether a

claim for relief expands the *Bivens* remedy to a new context or category of

defendants.  *Id.* at 1859, 1864.  The context is new if it is different in a

"meaningful" way from the three established *Bivens* cases.  *Id.*  "Meaningful"

differences can be based on:

> the rank of the officers involved; the constitutional right at
> issue; the generality or specificity of the official action; the
> extent of judicial guidance as to how an officer should
> respond to the problem or emergency to be confronted; the
> statutory or other legal mandate under which the officer
> was operating; the risk of disruptive intrusion by the
> Judiciary into the functioning of other branches; or the
> presence of potential special factors that previous *Bivens*
> cases did not consider.

*Id.* at 1859-60; *see also Mack v. Yost*, 968 F.3d 311, 320 (3d Cir. 2020) ("[T]he

'proper test' for determining whether a case presents a new *Bivens* context is if the

Supreme Court has not previously recognized a claim in that context.  A context is

'new' if it implicates a constitutional right not previously recognized by the

Supreme Court.") (internal citations omitted).  Second, if the case presents a new

context, the court must consider whether "special factors counselling hesitation"

against extending *Bivens* into this area exist "in the absence of affirmative action by Congress." *Id.* at 1857. "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858. "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," then the Judiciary should defer and allow Congress to play its proper role. *Id.* at 1858.

This analysis requires the Court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected cost and consequences to the government itself. *Id.* Additionally, "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id.*, 137 S. Ct. at 1865. In the prison context, the Supreme Court noted that:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs … [T]he Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* at 1865.[7]

Post–*Ziglar*, the Third Circuit Court of Appeals has held that the "recognition of a cause of action under a constitutional amendment does not mean that such an action can vindicate every violation of the rights afforded by that particular amendment." *Vanderklok v. United States* 868 F.3d 189, 199 (3d Cir. 2017). That is the case here. Kalu claims DHO Bittenbender violated his First Amendment rights by imposing unwarranted sanctions against him after he refused to drop his sexual misconduct claim against Lt. Middernacht. While he may state a First Amendment constitutional claim, it is not a claim the Supreme Court has recognized for relief in the *Bivens* context.

To date, the Supreme Court has not recognized a *Bivens* remedy for First Amendment retaliation claims. *Reichle v. Howards*, 566 U.S. 658, 663 n. 4 (2012) The Third Circuit Court of Appeals has declined to extend the *Bivens* remedy to a First Amendment retaliation claims. *Mack*, 968 F.3d at 320 (declining to extend *Bivens* to a First Amendment retaliation claim in the context of prison workplace assignment); *Vanderklok,* 868 F.3d at 199 (declining to extend *Bivens* to First Amendment retaliation claim filed against a Transportation Safety Administration screener); *Watlington on behalf of FCI Schuylkill African Am. Inmates v. Reigel*,

---

[7] Claims redressable via the Prison Litigation Reform Act ("PLRA") cover "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

723 F. App'x 137, 140 n. 3 (3d Cir. Jan 22, 2018) (affirming district court's dismissal of federal prisoner's First Amendment retaliation claim against BOP staff as non-cognizable *Bivens* claim).

As noted above, Kalu's First Amendment retaliation claim against DHO Bittenbender, or any named Defendant, fails to state a cognizable *Bivens* claim. Accordingly, the court will dismiss Kalu's First Amendment retaliation claims. Kalu's retaliation claim will be dismissed with prejudice as leave to amend would be futile in light of *Ziglar* and *Mack*.

## B. Warden Spaulding's Lack of Personal Involvement.

Kalu's factual allegations regarding Warden Spaulding are limited to the communication that occurred on November 2, 2016. (Doc. 1, ¶¶ 5-7.) After Kalu sent a confidential email to Warden Spaulding concerning Lt. Middernatch's sexual abuse, Warden Spaulding replied that he would look into the matter and then get back to Plaintiff, and then Plaintiff never heard back from Warden Spaulding. (*Id.*, ¶ 6.) Although Kalu claims he never heard from Warden Spaulding, he states he was removed from general population on the same day as the Warden's response and placed in the SHU where he was interviewed by the institution's SIS staff concerning his allegations of sexual abuse.[8] (*Id.*, ¶¶ 7–9.)

---

[8] It is noted that Kalu also avers that he learned of the results of the local SIS investigation on November 14, 2016. *See* Doc. 1 at ¶ 9.

Kalu states Warden Spaulding "is legally responsible for the operation and well being of prisoners under his supervision."  (*Id.*, ¶ 6.)

The doctrine of *respondeat superior* does not apply to constitutional claims. *Iqbal*, 556 U.S. at 675–676 ("[V]icarious liability is inapplicable to *Bivens* and § 1983 suits").  Rather, each named defendant must be shown, via complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  *Id.*  Because *Bivens* "does not allow vicarious liability, 'a plaintiff must plead that each Government–official defendant, through the official's own individual actions, has violated the Constitution.'"  *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 676).

Moreover, the filing of a grievance, participation in the "after–the–fact" review of a grievance, or dissatisfaction with the response to a grievance does not establish the involvement of officials and administrators in the underlying constitutional deprivation.  *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the

involvement of those officials and administrators in the underlying constitutional deprivation); *Ramos v. Pa. Dep't of Corr.*, No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate-plaintiff's grievance does not state a constitutional claim), *aff'd*, 142 F.3d 430 (3d Cir. 1998); *see also Rode*, 845 F.2d at 1207 (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

Absent from Kalu's pleading is any allegation that Warden Spaulding was knew of or otherwise acquiesced in Lt. Middernatch's alleged sexual assault of Plaintiff prior to the email Kalu sent on November 2, 2016. *See Rode*, 845 F.2d at 1207 (stating that a party may establish liability for the deprivation of a constitutional right only through a showing of personal involvement by each

defendant and explaining that "liability cannot be predicated solely on the operation of *respondeat superior*").  The complaint's factual allegations regarding Warden Spaulding are insufficient to allege a facially plausible *Bivens* claim that he was personally involved in the violation of Kalu's constitutional rights.

**C. The Statute of Limitations does not Bar Kalu's *Bivens* Complaint.**

"A *Bivens* claim, like a claim pursuant to 42 U.S.C. § 1983, is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal–injury claims."  *Wilson v. United States Gov't*, 735 F. App'x 50, n. 1 (3d Cir. 2018) (internal quotations and citations omitted).  In Pennsylvania, the statute of limitations for personal injury action is two years, subject to any state law tolling provisions that are not inconsistent with federal law. *See* 42 Pa. Const. Stat. Ann. § 5524; *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).  However, it is federal law that determines the date when a cause of action accrues.  Under federal law, a civil rights cause of action accrues, and the statute of limitations begins to run, "'when the plaintiff knew or should have known of the injury upon which [his] action is based.'"  *Kach*, 589 F.3d at 634 (quoted cases omitted).

Defendants argue that because Kalu filed his complaint on September 19, 2019,[9] "any alleged First and Eighth Amendment claims prior to September 19, 2017 are time-barred."  (Doc. 23, p. 8.)  However, Defendants do not address, within the context of their motion to dismiss, the Third Circuit Court of Appeal's ruling that a prisoner's statute of limitations is tolled during the administrative remedy process.  *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies").  The simple mathematic calculation of the statute of limitations based on the filing date of the complaint, without considerations of the inmate–plaintiff's exhaustion efforts, is an insufficient analysis of the defense.  Thus, Defendants' motion to dismiss based on the statute of limitations will be denied.

## D. The Prison Litigation Reform Act's Exhaustion Requirement.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "mandates that an inmate exhaust such administrative remedies as are available

_____

[9] The exact date Kalu filed his complaint is unclear.  Although he signed his complaint on August 20, 2019, there is no attestation that he placed in the prison's mail system on that date. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  The envelope containing Kalu's complaint and other documents is date stamped September 16, 2019.  Thus, while the date Kalu mailed his complaint is unclear, what is clear is that the precise number of days between the date he signed the complaint and the date it was postmarked is immaterial to the court's resolution of Defendants' statute of limitations argument.  *See infra.*

before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854–1855 (2016) (quotation omitted).  The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "[U]nexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Failure to exhaust is an affirmative defense that must be pleaded and proven by the defendants.  *Jones*, 549 U.S. at 212; *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  Once defendants present evidence of a prisoner's failure to exhaust, the burden of proof shifts to the inmate to show that exhaustion occurred or that administrative remedies were unavailable.  *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).  "Both the [United States] Supreme Court and [the Third Circuit Court of Appeals] have rejected judge-made exceptions to the PLRA." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (2020).  District courts may not "excuse [a prisoner's] failure to exhaust."  *Ross*, 136 S. Ct. at 1856 (rejecting a "special circumstance" exception).  Likewise, district courts do not have the authority "to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  *Nyhius v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

The PLRA's mandatory exhaustion requirement is not fulfilled unless the inmate properly complies with all of the agency's deadlines and other procedural rules pertaining to its administrative remedy process. *Jones*, 549 U.S. at 218; *see also Downey*, 968 F.3d at 305. It is the "'prison['s] grievance procedures [that] supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004)). An inmate's failure to comply with the procedural requirements of the prison's grievance system will result in the procedural default of the claim. *Spruill*, 372 F.3d at 227–32; *see also Williams*, 482 F.3d at 639 (inmate "procedurally defaulted" claim when he failed to comply with the requirements of the prison's grievance procedures). If the court concludes the plaintiff has failed to exhaust his available administrative remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). *Jones*, 549 U.S. at 223–34.

The purpose of the PLRA exhaustion requirement "was intended to return control of the inmate grievance process to prison administrators; to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." *Hardy v. Shaikh*, 959 F.3d 578, 586 (3d Cir. 2020) (internal quotation marks omitted) (citing *Spruill*, 372 F.3d at

230).  "But [these] benefits cannot be realized unless the grievance process to be exhausted is actually available to inmates and faithfully followed by the prisons" and inmates alike.  *Id.*  Thus, the PLRA only requires a prisoner exhaust those administrative remedies that are "available."  42 U.S.C. § 1997e(a); *Ross*, 136 S.Ct. at 1855.

Where "an administrative remedy, although officially on the books," is "not capable of use to obtain relief," it is unavailable.  *Rinaldi*, 904 F.3d at 266–67.  The Supreme Court has identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative remedy procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Ross,* 136 S.Ct. at 1858.  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id.*  Third, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1860.

Similarly, the Third Circuit Court of Appeals has found an inmate's administrative remedy "unavailable" where prison officials provide "misleading or deceptive [filing] instructions," *see Hardy*, 959 F.3d at 587, and when they fail to "timely (by its own procedural rules) respond to his grievance and then repeatedly

27

ignored his follow-up requests for a decision on his claim." *Robinson v. Sup't Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016) (state prison's administrative remedy process which did not contemplate an appeal from a non-decision thwarted the inmate's advancement of his claim through the appeal process); *see also Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[W]e hold that [the PLRA] requires strict compliance by prison officials with their own policies."). Further, where prison officials deter an inmate from pursuing an administrative remedy by making "serious threats of substantial retaliation … and bodily harm," the administrative remedy process is not "available."[10] *Rinaldi*, 904 F.3d at 267.

### E. Kalu Did Not Fail to Exhaust AR 888397 or AR 883971.

Here, Defendants seek summary judgment because Kalu did not fully exhaust his available administrative remedies regarding the claims raised in his complaint. Defendants present Kalu's administrative remedy generalized retrieval record, disciplinary record, and the declaration of Attorney Lavelle, all of which support their claim that Kalu did not seek final review at the Central Office level

---

[10]  A prison official's serious threats of retaliation will make administrative remedies "unavailable" when "the threat actually did deter the plaintiff from lodging a grievance or pursuing a particular part of the process" and "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Rinaldi*, 904 F.3d at 268 (quoting *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008)).

for any administrative remedy or disciplinary appeal he filed while at FCI Allenwood.  In his opposition materials, Kalu provides two sworn declarations setting forth two arguments relative to his efforts to exhaust his PREA claim, and his claims against DHO Bittenbender.  He argues that he successfully exhausted his claims as to DHO Bittenbender via AR 888397, which was expunged from his record upon appeal to the Northeast Regional Office.  (Doc. 34, Kalu Decl. ¶ 6.) Next, he claims the BOP's referral of AR 883971–R2 for further review by another department led him to believe he would receive a response prior to his need to pursue the administrative remedy process further concerning his PREA claim.  (*Id.*, Kalu Decl. ¶ 13.)  The court examines both assertions.

At to his first claim, Kalu argues that he did properly exhaust AR 888397 even though he did not appeal the administrative remedy to Central Office. Contrary to Defendants' assertion, this administrative remedy was not rejected for failing to use the proper form.  The record supports Kalu's statement that AR 888397 was resolved in his favor when IR 2925079 was expunged from his record. (Doc. 34, p. 21, Doc. 22–1, 28-33, Doc. 23, p. 17.)  Although AR 888397 involved the disciplinary proceedings conducted by DHO Bomboy, and not DHO Bittenbender, Defendants based their motion for summary judgment, in part, on Kalu's failure to exhaust AR 888397.  Thus, Defendants' motion will be denied with respect to the failure to exhaust argument with respect to AR 888397.

Next, the court liberally construes the declaration of this self-represented Plaintiff to argue that the BOP's referral of his PREA claim, presented in AR 883971, advised him that his claim was referred to another BOP department for "review," appeared to suggest that he needed to await the outcome of that review prior to pursuing his administrative remedies.  (Doc. 34, ¶ 13, pp. 5, 40.)  It is undisputed that the BOP's response to Kalu's PREA complaint rejected the administrative remedy for technical non-compliance and advised him the matter was referred "to another department for review."  (Doc. 34, p. 40.)  Defendants do not address the impact of this referral on his administrative remedy, or what instruction inmates are given in this situation as to their ability or requirement to complete the exhaustion process during the independent review.

The court finds that the active "review" of the issues raised in Kalu's administrative remedy is inconsistent with the BOP's contention that it rejected the grievance, and supports Kalu's suggestion of misdirection in the administrative remedy process.  Moreover, the BOP's administrative remedy program with respect to addressing PREA complaints states that "[t]he agency shall issue a final agency decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance."  (Doc. 22-1, p. 16.)  Thus, to the extent that some portion of AR 883971 was referred to another department "for review," it is not clear that Kalu could have or should have resubmitted his

30

grievance to have it investigated or that he needed to file an appeal prior to learning the results of the "review."

Based on Kalu's affidavit suggesting that he was led to believe that he needed to wait upon the outcome of the portion of his administrative remedy that was referred for "review," there is insufficient evidence to find that he failed to exhaust his administrative remedies when he claims he was never advised of the outcome of his PREA complaint. Accordingly, Defendants' motion for summary judgment based on Kalu's failure to exhaust his administrative remedies as to AR 883971-R2 will be denied.

CONCLUSION

In light of the above, Defendants' motion to dismiss claims against DHO Bittenbender is granted. Kalu will not be granted leave to amend his complaint as to this Defendant as any amendment would be futile. Defendants' motion to dismiss based on Kalu's failure to state a claim against Warden Spaulding will be granted. However, because Kalu may be able to remedy his failure to allege the personal involvement of Warden Spaulding in the alleged constitution wrongdoing, he will be granted leave to file an amended complaint as to Warden Spaulding.[11]

---

[11] Kalu is cautioned that any amended complaint filed will replace the original complaint already filed. It must be "retyped or reprinted so that it will be complete in itself including exhibits." M.D. Pa. LR 15.1; *see also W. Run Student Hous. Assocs. v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013). Thus, he must include *all* claims he seeks to pursue in this

Defendants' motion for summary judgment will be denied as Defendants have not

established that Kalu failed to properly exhaust his claims with respect to AR

888397–R1 or AR 883971–R2.  As such, Defendants are not entitled to summary

judgment on this basis.

An appropriate order will follow.


s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Dated:  March 30, 2021      Middle District of Pennsylvania

---

action, that were not dismissed with prejudice by the court, i.e. his
claims against Lt. Middernatch.