## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN O. KALU,           :   Civil No. 3:19-CV-01621
                        :
      Plaintiff,      :
                        :
      v.             :
                        :
MR. SPAULDING, WARDEN OF FCI :
ALLENWOOD, *et al.*,       :
                        :   Judge Jennifer P. Wilson
        Defendants.

## MEMORANDUM

This case has involved a number of claims arising from an alleged assault of a federal inmate by a member of prison staff.  Pending before the court is Defendant Middernatch's motion to dismiss the remaining Eighth Amendment claims. (Doc. 56.)  For the reasons that follow, the court declines to extend the *Bivens* remedy to the specific contexts Plaintiff raises in his complaint.  Therefore, Defendant's motion will be granted, and the complaint will be dismissed with prejudice.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Allegations of the Complaint

On August 20, 2019, Plaintiff John O. Kalu ("Plaintiff" or "Kalu"), a self-represented federal prisoner formerly housed at the Allenwood Federal Correctional Institution ("FCI Allenwood") in Allenwood, Pennsylvania, initiated this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of Federal*

*Bureau of Narcotics*, 403 U.S. 388 (1971).[1]  (Doc. 1.)  Named as Defendants were Warden Spaulding, Lt. K. Middernatch, and Disciplinary Hearing Officer ("DHO") K. Bittenbender.  (*Id*.)

In his complaint, Kalu alleges that Lt. Middernatch sexually assaulted him on three separate occasions while he was housed in general population: October 14, October 29, and December 1, 2016.  (*Id*., ¶¶ 1–4, ¶ 7.)  Next, Kalu alleges that on November 2, 2016, the same day he sent a confidential electronic email to Warden Spaulding concerning Lt. Middernatch's repeated aggressive sexual behavior, he was removed from general population and placed in the Special Housing Unit ("SHU").  (*Id.*, ¶¶ 6–7.)  On November 9, 2016, Kalu was interviewed by members of the Secret Investigation Services ("SIS") concerning his allegations against Lt. Middernatch.  (*Id.*, ¶ 8.)  On November 14, 2016, Kalu learned that staff concluded their investigation after Lt. Middernatch denied the allegations.  (*Id.*, ¶ 9.)  At some point, Kalu was issued an incident report for refusing to leave the SHU and return to "the compound."

Kalu claims that DHO Bittenbender conducted the disciplinary hearing on December 20, 2016.  (*Id.*, ¶¶ 11–12.)  During the hearing, DHO Bittenbender threatened to impose numerous sanctions if Kalu did not drop his Prison Rape

---

[1] Plaintiff is presently housed in the Williamsburg Federal Correctional Institution, in Salters, South Carolina.  (Doc. 39).

Elimination Act ("PREA") complaint against Lt. Middernatch.  After refusing to

do so, DHO Bittenbender retaliated against Kalu and imposed various sanctions

including the disallowance of good conduct time and the loss of various privileges

(phone, visits, loss of mattress between 8 a.m. and 8 p.m.).  (*Id.*, ¶¶ 11–12, 16.)  On

February 17, 2017, after Kalu filed disciplinary appeal 888397–R1, the

Administrative Remedy Coordinator "expunged the sanctions imposed" by DHO

Bittenbender.  (*Id.*, p. 18.)[2]

Kalu also claims all Defendants forced him to endure substandard conditions

of confinement while housed in the SHU including being forced to sleep on a cold

steel metal bunk for six months in below freezing temperatures with no heat or

thermal clothing.  (*Id.*, ¶ 15.)  Kalu's claim for monetary damages, TRT–NER–

2019–01529, was denied by the Bureau of Prisons ("BOP") on December 21,

2017.  (*Id.*, p. 19.)  Kalu claims that he continues to suffer from mental anguish

because of these events.  He believes he "may have graduated into PTSD."  (*Id.*, ¶

17.)  He seeks compensatory and punitive damages.  (*Id.*, ¶¶ 19–22.)

## B. Defendants' First Motion to Dismiss

Defendants filed a first motion to dismiss and, in the alternative, motion for

summary judgment on March 16, 2020.  (Doc. 21.)  The court provided notice to

the parties that Defendants' motion to dismiss and, in the alternative, motion for

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

summary judgment would be treated solely as a motion for summary judgment as it raised, *inter alia*, the issue of Plaintiff's exhaustion of administrative remedies. (Doc. 35.)

On March 30, 2021, this court entered an order granting in part and denying in part Defendants' first motion to dismiss and, in the alternative, motion for summary judgment.  (Doc. 37.)  All claims against Defendant Bittenbender were dismissed with prejudice, and all claims against Defendant Spaulding were dismissed without prejudice.  (*Id.*)  Plaintiff was given leave to file an amended complaint to remedy the deficiencies in his claims against Defendant Spaulding. (*Id.*)  The court denied Defendants' motion for summary judgment based on the allegation that Plaintiff failed to exhaust his administrative remedies.  (*Id.*)  The suit was allowed to proceed exclusively on the sexual assault claim raised against Defendant Middernatch.  (*Id.*)  The order did not address the conditions-of-confinement claim raised against Defendant Middernatch.  (*Id.*)

## C. Second Motion to Dismiss

Plaintiff filed an amended complaint on July 30, 2021.  (Doc. 46.) Defendants filed a motion to dismiss this amended complaint on September 13, 2021.  (Doc. 49.)  Plaintiff then sought to withdraw the amended complaint on September 27, 2021.  (Doc. 52.)  The court granted Plaintiff's motion withdrawing

the amended complaint and denying the second motion to dismiss as moot.  (Doc. 54.)

### D. Third Motion to Dismiss

Before the court is a third motion to dismiss filed by Defendant Middernatch, the sole remaining defendant.  (Doc. 56.)  He has filed a brief in support of his motion.  (Doc. 57.)  Plaintiff has responded with a brief in opposition.  (Doc. 63.)  Defendant Middernatch has replied.  (Doc. 64.)  The motion is now ripe to be addressed by the court.

### STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than

5

conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015). Self-represented litigants are to be

granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

DISCUSSION

Plaintiff's complaint raises two claims against Defendant Middernatch that were not previously addressed by this court: (1) a sexual assault claim under the Eighth Amendment; and (2) a condition-of-confinement claim under the Eighth Amendment. (Doc. 1.) It is these remaining two claims that Defendant Middernatch seeks to have dismissed. (Doc. 57.)

## A. The *Bivens* Remedy Does Not Extend to Plaintiff's Eighth Amendment Claims

"*Bivens* is the short-hand name given to causes of action against federal officials for alleged constitutional violations." *Bistrian*, 912 F.3d at 88. In the case giving the doctrine its name, the Supreme Court held there is a cause of action for damages when a federal agent, acting under color of his authority, conducts an unreasonable search and seizure in violation of the Fourth Amendment. *Bivens*, 403 U.S. at 397. To date, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth, and Eighth Amendments. *See Bivens*, 403 U.S.

388 (Fourth Amendment prohibition against unreasonable searches and seizures); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination in the employment context); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishment Clause for failure to provide an inmate adequate medical treatment).  The Supreme Court cautioned against expanding *Bivens* beyond the three established circumstances where it has formally acknowledged the availability of a *Bivens* remedy.  *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017) ("[E]xpanding the *Bivens* remedy is now a disfavored judicial activity" and clarifying that "a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress.") (internal citation and quotation marks omitted).

Post-*Ziglar*, courts must apply a two-part test to determine whether a claim for relief expands the *Bivens* remedy to a new context or category of defendants. *Id.* at 1849.  First, a court must determine if the *Bivens* claim presents a new context.  *Mack,* 968 F.3d at 317.  The context is new if it is different in a "meaningful" way from the three established *Bivens* cases.  *Ziglar*, 137 S.Ct. at 1849.  "Meaningful" differences can be based on:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the

8

Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859-60; *see also Mack,* 968 F.3d at 320 ("[T]he 'proper test' for

determining whether a case presents a new *Bivens* context is if the Supreme Court

has not previously recognized a claim in that context. A context is 'new' if it

implicates a constitutional right not previously recognized by the Supreme Court.")

(internal citations omitted).  Second, if the case presents a new context, the court

must consider whether "special factors counselling hesitation" against extending

*Bivens* into this area exist "in the absence of affirmative action by Congress."  *Id.*

at 1857.  "[T]he inquiry must concentrate on whether the Judiciary is well suited,

absent congressional action or instruction, to consider and weigh the costs and

benefits of allowing a damages action to proceed."  *Id.* at 1858.  "[I]f there are

sound reasons to think Congress might doubt the efficacy or necessity of a

damages remedy," then the Judiciary should defer and allow Congress to play its

proper role.  *Id.* at 1858.

This analysis requires the court to assess the impact on governmental

operations system-wide, including the burdens on government employees who are

sued personally, as well as the projected cost and consequences to the government

itself.  *Id.*  Additionally, "the existence of alternative remedies usually precludes a

court from authorizing a *Bivens* action."  *Id.*, 137 S. Ct. at 1865.  In the prison

context, the Supreme Court noted that:

Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs . . . [T]he Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* at 1865.[3]

Post–*Ziglar*, the Third Circuit Court of Appeals has held that the "recognition of a cause of action under a constitutional amendment does not mean that such an action can vindicate every violation of the rights afforded by that particular amendment." *Vanderklok v. United States* 868 F.3d 189, 199 (3d Cir. 2017). That is the case here. Plaintiff's complaint raises two claims under the Eighth Amendment, but they are not the same as those raised in the *Carlson* case where the Court recognized a *Bivens* claim for a violation of the Eighth Amendment Cruel and Unusual Punishment Clause for failure to provide an inmate adequate medical treatment.

## A. The Eighth Amendment Sexual Assault Claim Will Be Dismissed.

Plaintiff's complaint raises an Eighth Amendment cruel and unusual punishment claim premised on the alleged repeated sexual assaults by Defendant

---

[3] Claims redressable via the Prison Litigation Reform Act ("PLRA") cover "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Middernatch.  (Doc. 1, ¶ 14.)  However, the court declines to extend the *Bivens* remedy to Eighth Amendment cruel and unusual punishment claims premised on sexual assault.

An alleged sexual assault is a new context under *Bivens*.  While one of the three existing contexts with a recognized *Bivens* remedy is an Eighth Amendment claim, it is a failure to provide an inmate adequate medical treatment claim.  *See Carlson*, 446 U.S. 14.  An alleged sexual assault of an inmate at the hands of an officer is a meaningfully different context.[4]  Therefore, the court must consider whether there are "special factors counselling hesitation" against extending *Bivens* into this area.  This court joins other district courts in finding that there are such special factors causing hesitation in this context.  *See Bonds v. Long*, No. 4:19-CV-967, 2019 WL 4141592 at *2 (N.D. Ohio Aug. 30, 2019) (finding that the BOP's administrative remedy process and the FTCA exist to address alleged sexual assault claims); *Taylor v. Lockett*, No. 5:17-cv-00023-Oc-02PRL, 2019 WL 764023 at *7–8 (M.D. Fla. Feb. 21, 2019) (finding that the BOP's administrative remedy process exists to address alleged sexual assault claims).  Likewise, the

---

[4] The court notes that the Third Circuit has recognized a *Bivens* remedy in the context of a transitioning transgender woman on estrogen who had developed female physical characteristics and who was placed in the general population of all-male prisoners because the Supreme Court in *Farmer v. Brennan*, 114 S.C. 1970 (1994) had previously established that a federal prisoner has a clearly established constitutional right to have prison officials protect him from inmate violence and provided a remedy when an official violated that right.  *Shorter v. U.S.* 12 F.4th 366, 375 (3d Cir. 2021).  However, the court distinguishes this case as this set of facts does not concern inmate-on-inmate violence.

court finds that it is significant that Congress, in passing the PREA opted not to include a private right for action for damages for inmates.  *See Freedland v. Mattingly*, No. 1:20-cv-00081, 2021 WL 1017253 at *9 (M.D. Pa. Mar. 17, 2021). In light of these special factors counseling hesitation, the court will not extend the *Bivens* remedy to this context, and Plaintiff's claim will be dismissed.

## B. The Eighth Amendment Conditions of Confinement Claim Will Be Dismissed.

Plaintiff's complaint raises an Eighth Amendment cruel and unusual punishment claim against Defendant Middernatch premised on conditions of confinement.  (Doc. 1, ¶ 15.)

A conditions of confinement claim is a new context under *Bivens*.  A panel of the Third Circuit Court of Appeals provided guidance in such situations in a nonprecedential opinion in *Mammana v. Barben*, 856 Fed.App'x. 411 (3d Cir. May 21, 2021).  In the decision, the court rejected the argument that *Carlson* gives rise to an Eighth Amendment conditions-of-confinement claim against federal officials. *See Mammana*, 856 Fed.App'x. at 414-15.  The plaintiff in *Mammana* challenged his "confinement in a chilled room with constant lighting, no bedding, and only paper-like clothing."  *Id*.  The court found that, other than sharing a constitutional amendment and the federal prison setting, there was "little resemblance" between the plaintiff's conditions-of-confinement claim and the estate's claim in *Carlson* "against prison officials for failure to treat an inmate's asthma."  *Id*. (quoting

12

*Ziglar*, 137 S. Ct. at 1860).  Therefore, the court will follow this guidance and find that a conditions-of-confinement claim is a new context under *Bivens*.

Therefore, the court must consider whether there are "special factors counselling hesitation" against extending *Bivens* to this area.  Again, the court notes that Plaintiff had the BOP's administrative remedy process available to address his claims.  Additionally, as the Supreme Court in *Ziglar* explained, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation" and Congress's omission of a "standalone damages remedy against federal jailers" when it passed the Prison Litigation Reform Act post-*Carlson* "suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment."  *Ziglar*, 137 S. Ct. at 1865.  While the Third Circuit has rejected the argument that Congress's inaction in this area "suggests that Congress did not want a damages remedy against prison officials for constitutional violations," *Mack*, 968 F.3d at 324, because the PLRA "cannot rightly be seen as dictating that a *Bivens* cause of action should not exist at all," *Bistrian*, 912 F.3d at 93, a district court can find that congressional silence on prison litigation can still counsel hesitation in *some* contexts.  *See Mammana*, 856 Fed. App'x. at 415.  A conditions-of-confinement claim is different and is more general than the failure to provide adequate medical

13

treatment alleged in *Carlson*.  As such, the court declines to extend the *Bivens* remedy to this context and the claim will be dismissed.

## CONCLUSION

For the foregoing reasons, the court concludes that these two claims present new contexts and that special factors counsel against extending the *Bivens* remedy to these new contexts.  Therefore, the court will grant Defendants' motion to dismiss for failure to state a claim upon which relief can be granted.  Plaintiff will not be permitted to amend his complaint as any as any curative action would be futile.  An appropriate order will follow.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 23, 2022